FLORENCE CALLEY (*by her mother and next friend*)

*v.*

BOSTON & MAINE RAILROAD.

ELLA CALLEY *v.* SAME.

ROSELLE MACDONALD (*by her father and next friend*) *v.* SAME.

ROSELLE MACDONALD, SR. *v.* SAME.

DANIEL F. MACDONALD *v.* SAME.

LOUISE PEASE (*by her husband and next friend*) *v.* SAME.

HAMILTON DOLBY (*by his next friend*) *v.* SAME.

HERBERT L. YOUNG *v.* ROSELLE MACDONALD.

HERBERT L. YOUNG (*father and next friend of* DOROTHY YOUNG)

*v.*

SAME.

ALLEN M. ATWOOD (*husband and next friend of* DOROTHY S. ATWOOD)

*v.*

SAME.

*Murchie & Murchie (Mr. Alexander Murchie* orally), for all plaintiffs in the actions against the Boston & Maine Railroad.

*Demond, Sulloway, Piper & Jones (Mr. Jones* orally), for the Boston & Maine Railroad.

*John M. Stark, Donald G. Matson,* and *Demond, Sulloway, Piper & Jones (Mr. James B. Godfrey* orally), for the plaintiffs in the actions against Roselle MacDonald.

*Robert W. Upton* and *Laurence I. Duncan (Mr. Duncan* orally), for the defendant Roselle MacDonald.

MARBLE, J.   Since the bridge in question was a railroad crossing within the meaning of section 1 of chapter 249 of the Public Laws (R. L., *c.* 299, *s.* 1), it was the duty of the defendant railroad to keep it in a reasonably safe condition for public use.   *Pierce* v. *Railroad,* 83 N. H. 466, and cases cited.   How far compliance with a detailed administrative order constitutes a defense in actions of this kind need not be determined, for the order on which the railroad here

relies is couched in general terms and merely provides "that the proprietors of the Northern Railroad and the proprietors of the Boston & Maine Railroad, as lessee of the Northern Railroad, shall construct a bridge over the tracks of the Northern Railroad at this point which shall be safe and suitable for highway travel over it." 10 N. H. P. S. C., 487, 488.

It was not the original intention of the Commission, acting on the petition of the town for the relocation of the highway, to make any order whatever relating to the construction of the bridge. The chairman of the Commission, answering a letter received from the law department of the railroad, wrote on December 29, 1925, as follows: "We also notice that you refer to the commission making an order directed against the proprietors of the Northern Railroad. We had not planned to make any order in this case, provided the railroad was willing to go along voluntarily and construct this bridge without an order."

Apparently, the Commission, in approving the working plans of the bridge, was not particularly concerned with the type of curb or railing erected, since in the same letter the chairman declared: "As previously stated to you, so long as the railroad constructs a bridge which is safe and adequate in width and dimension to properly accommodate the travel of the highway, and is not constructed in such a way as to obstruct the view to the highway travel approaching the bridge, the commission would not be critical as to the design of the bridge and the material entering into its construction."

Certain alterations in the plans were suggested by the bridge engineer of the State Highway Department, but none of these suggested changes related to the curb or railing. No formal written approval of the plans was ever entered on the records of the Commission. The informal preliminary approval (accorded in point of fact by the Highway Department rather than by the Commission), followed by a formal and final order merely requiring the railroad to construct a bridge "which shall be safe and suitable," did not, in our opinion, relieve the railroad from liability for negligent construction. See *McGettigan* v. *Railroad,* 268 N. Y. 66. See also, *Hayes* v. *Company*, 86 N. H. 486. Cases on the subject are collected in 49 Harv. Law Rev. 843.

The case of *Cozzi* v. *Hooksett*, 84 N. H. 530, on which the railroad relies, is inapplicable. The act there construed (P. L., *c.* 89, *s.* 2) expressly provides that a standard railing erected by a town "shall

be held" to be sufficient if approved by the State Highway Department. The Public Laws, effective at the time of the accident, contain no provision immunizing railroads from liability for faulty construction in cases where the construction has received Commission approval.

The bridge was one hundred and twenty-nine feet in length and twenty-seven feet in width. The railing or "open fence" was designed "just to indicate the side of the bridge" and to "stand up against" the wind. The curb comprised a wooden "guard stick" or "wheel guard," approximately nine inches high, which ran along the base of the fence, its purpose being "to deflect a wheel that's driven over the bridge parallel to the wheel guard."

It could be found that the speed of the car when it entered the bridge and commenced to skid was only twenty miles an hour. The car did not go swiftly through the fence but remained suspended for a few seconds (long enough, in fact, for the driver to turn off the ignition) before it fell to the ground below. There was expert testimony to the effect that a slightly higher curb would have prevented the accident. The question of the railroad's causal negligence was for the jury.

The bridge engineer for the State Highway Department testified that the bridge conformed to the requirements of the department for a bridge of that kind. He further testified that these requirements were "merely something for a guide" and that a nine-inch curb was the "minimum requirement which in the opinion of these engineers is safe." He testified without exception that pipe railings were maintained on some wooden bridges and stated, subject to exception, that "step-back curbs" were specified by the American Association of State Highway Officials for bridges with concrete floors, carrying "approximately the same travel as the bridge . . . under consideration." The evidence excepted to was offered "to test the witness's knowledge as to curbs and the element of safety." What safety required was a question of fact under all the circumstances of the case. *Kelsea* v. *Stratford*, 80 N. H. 148, 152; *Pierce* v. *Railroad*, 83 N. H. 466. The evidence was admissible for the purpose stated. *Speares Sons Co.* v. *Railroad*, 80 N. H. 243, 244; *Romani* v. *Railroad*, 81 N. H. 206, 208; *Bridges* v. *Company*, 85 N. H. 220, 224.

The railroad excepted to the refusal of the court "to withdraw the issue of the claim of negligence on account of the railings in contrast to the curb." Reliance on the curb alone was not justified

as a matter of law. The jury could properly find that a railing designed merely to withstand the force of the wind was inadequate and that a somewhat stouter structure would have prevented the accident. *Clark* v. *Hampton*, 83 N. H. 524, 527, and cases cited. The jurors were correctly instructed that the test for them to apply was "whether the curb and railing in question were such as the ordinary man would maintain at that place, taking into consideration the kind and amount of travel over the bridge or crossing." See *Richmond* v. *Bethlehem*, 79 N. H. 78, 80; *Kelsea* v. *Stratford*, 80 N. H. 148, 152.

The railroad, seeking to apply to the situation the rule announced in *Shea* v. *Railroad*, 88 N. H. 462, requested the court to charge that if the bridge when built was reasonably adequate, the jury could not find the railroad negligent even though subsequent changes in the volume and mode of highway travel had rendered the bridge inadequate. The principle of the *Shea* case was not involved. The Presiding Justice informed the jury that the railroad "had no duty to maintain the approaches to the bridge and had nothing to do about the location of the bridge" and that with respect to the bridge itself, the claim of the plaintiffs suing the railroad was "that the so-called curb and railing were not sufficient."

There was evidence that snow had been allowed to accumulate at the sides of the bridge during the winter and that this snow, which was "nearly as hard as ice," extended "to the top of the curb." Under such circumstances, the curb "would not be effective in deflecting the wheel of an automobile." The railroad, having requested an instruction to the effect that it "had no duty to remove snow on the bridge," excepted to that part of the charge in which the Presiding Justice instructed the jury that if a reasonable person would have removed the snow and ice from the curb, it became the duty of the railroad to remove it.

Since the liability of railroads for the improper maintenance of bridges is not, as in the case of towns, restricted to defects of structure (see *Bernier* v. *Whitefield*, 80 N. H. 245), it was the duty of the defendant railroad to exercise reasonable care to see that the bridge was free from unsafe accumulations of ice and snow unless relieved of that duty by statute. For some years the State Highway Department had taken care of the traveled surface of the bridge — had tarred it in the summer and "plowed it and sanded it" in the winter. There is no claim that this work was not prop-

erly authorized. Section 1 of chapter 16 of the Laws of 1935 (R. L., c. 100, s. 10) provides that the State Highway Department "shall assume full control of reconstruction and maintenance of all trunk lines, including bridges thereon, and all state-aided highways, excluding bridges thereon, now or hereafter constructed, and the removal of snow from such sections thereof as may be designated by the highway commissioner with the approval of the governor and council."

An overhead highway bridge such as that erected by the defendant railroad, though technically a railroad crossing, is also for all practical purposes a part of the highway on which it is located, and although railroads are still required to keep overpass bridges in repair (see *Laconia* v. *Railroad,* 81 N. H. 408), it could hardly have been the legislative intent not to include such bridges within the operation of the snow-removal provisions of the statute. To have excluded them would have resulted in a most unexpeditious method of keeping the highways open for traffic.

The bridge in question was located on the trunk line known as Route 11, and since the State Highway Department had assumed, under statutory authority, the maintenance of that route and the work of removing snow from the bridge, the railroad was, we believe, freed from all duties pertaining to snow removal and cannot be held liable for any negligence on the part of the Highway Department in the performance of that work. The exception is sustained.

The action of Daniel F. MacDonald was brought to recover for medical expenses incurred by him because of his daughter's injuries. Subject to exception, the jurors were instructed that if they should find the railroad at fault, their verdict would be for the plaintiff in that case, "regardless of whether Miss MacDonald was or was not at fault." A majority of the court is in accord with the widely prevailing rule which denies recovery in such a situation. Restatement, Torts, s. 494; Annotation, 42 A. L. R. 717, 718. It is suggested that while the totality of damage for injuring one may be apportioned among those sustaining it, there can be no severance of liability. The father's damage in the present case was "a necessary concomitant of the bodily injuries suffered" by his daughter. *American &c. Ins. Co.* v. *Kopka,* 88 N. H. 182, 183. Extraneous facts account for the division of damages, and liability to pay part of them but not the other part seems illogical. If the daughter were of age, the railroad would not be liable either to her or to her

father, and a rule which creates liability merely because she is a minor appears to involve an incompatible distinction. Nor does the denial of recovery to the father mean the imputation to him of his daughter's negligence. The verdict against Roselle exonerates the railroad from injuring her, and her medical expenses are merely a "consequential" result of the bodily injury she has suffered. See *Lumbermen's &c. Co.* v. *Yeroyan*, 90 N.. H. 145, 146. The railroad's exception is sustained.

Counsel for Roselle MacDonald (the daughter) in her action against the railroad excepted to the allowance of an alleged misstatement of the evidence by opposing counsel in his argument to the jury. The statement objected to was to the effect that a witness had testified that he found a "gouge mark" on the snow bank, "a fresh mark made by this car" opposite a big boulder. The statement was objected to on the ground that the witness "did not testify that the mark he found was made by this car." The witness was asked if he found "any indication of the course of the car." He replied that there was a "gouge mark in the snow bank," that it was "about opposite the boulder at the end of the bridge," that it gave "evidence of having been made by an automobile," that it was a fresh mark, and that he "noticed the gouge in the banking" when he "tried to figure out the course the car took." Since counsel merely stated what was the fair import of the testimony, the exception is overruled. *Maravas* v. *Corporation*, 82 N. H. 533, 538, 539; *Roberts* v. *Hillsborough Mills*, 85 N. H. 517.

The trial was held at the October term, 1941, but the writs in the *Pease* and *Dolby* cases were not returnable until the April term, 1942. Counsel for the railroad, appearing specially, excepted to the order of the court requiring the trial of those cases with the others. Since new trials must be ordered in these actions because of the error in the charge already discussed, it is unnecessary to consider this particular exception.

The suits against Roselle MacDonald (hereinafter called the defendant) remain to be considered. The highway approached the bridge on a curve; it had been snowing during the day, the snow had melted to some extent and the road was slippery. The defendant entered the bridge without any reduction in speed, the car skidded to the left and the accident occurred. It could be found on the evidence that the defendant was negligent.

On November 15, 1941, the plaintiff Young, who had brought an action against the railroad for himself individually and one as

father and next friend of Dorothy Young, received from the railroad the sum of $200 in consideration of a covenant not to sue. This covenant contained an express reservation of rights against third persons. On December 8, 1941, the docket entry, "Neither party, no further action," was made in each of the railroad cases in accordance with the stipulations signed by the parties. The defendant offered these stipulations and docket entries in evidence, claiming that they were in effect judgments constituting a complete bar to the actions brought against her. Her counsel now argue that the case of *Masterson* v. *Railway*, 83 N. H. 190, is not controlling because the entry in that case "made upon compromise of the claim against Fraser was merely neither party as to him."

In the *Masterson* case both Fraser and the street railway were joined as defendants and the agreement was that "the following entry may be made between the plaintiff and the defendant James A. Fraser only: 'Neither party. No further action to be brought for the same cause.'" 393 Briefs & Cases, 171. When the stipulations in the present cases are read in connection with the covenant not to sue, the meaning is clear: no further action is to be brought against the defendant railroad (the only defendant named in the action). That being the intention, no reason is apparent why the entries, if technically incorrect, cannot now "be altered to conform to such intention." *Colby* v. *Walker*, 86 N. H. 568, 574.

The plaintiff Dorothy Young stated on cross-examination that she had "had a suit against the railroad," whereupon counsel for the railroad moved the court to strike the statement out as "very prejudicial." Even if the statement was relevant, as defendant's counsel contend, it was within the court's discretion to strike it out as unduly prejudicial. *Pope* v. *Railroad*, 79 N. H. 52; *Rogers* v. *Rogers*, 80 N. H. 96; *State* v. *Braley*, 81 N. H. 323.

Florence Calley, a plaintiff in one of the actions against the railroad, testified that the car "wasn't going fast" and denied ever having said that the accident was caused because "the car was going too fast." A witness stated that Miss Calley had made this latter assertion to him. The evidence was offered "in contradiction of Miss Calley" and as an admission against her in her case. Counsel for the railroad said: "I suppose on the question of credibility it is admissible in all cases." The Presiding Justice answered: "All right. You may put the evidence in and the jury will apply it wherever it should be applied under proper instructions." The evidence was admissible for the purpose stated in the offer.

It is true that the Presiding Justice did not give the instructions which he intimated he would later give, but the trial was a long and complicated one and some duty rested on counsel, if he desired to have the limitations on the use of the testimony meticulously explained, to call the matter to the court's attention. See *Reed* v. *Company*, 84 N. H. 156, 160; *State* v. *Hale*, 85 N. H. 403, 411.

Subject to the defendant's exception, counsel for the plaintiffs Young and Atwood was permitted to argue to the jury as follows: "Mr. Upton in his defense of the MacDonald case seemed to undertake more of a prosecution of Mr. Murchie's case against the railroad than he did a defense of his own driver, and that of course is always some sign of weakness in his defense." The railroad's negligence was immaterial in the *MacDonald* cases if the defendant was guilty of negligence contributing to the accident. The suggestion that in emphasizing the negligence of the railroad counsel was drawing the jury's attention away from the conduct of the defendant was not so unwarranted as to make applicable the rule announced in *Mann* v. *Company*, 90 N. H. 1. See *Martel* v. *White Mills*, 79 N. H. 439, 442, 443; *Robertson* v. *Monroe*, 80 N. H. 258, 267; *State* v. *Bozek*, 81 N. H. 277, 278.

The defendant excepted to the trial court's instruction that if the jury "should find that the auto skidded in the first instance because of the manner in which the car was operated, it may be evidence of negligence on the part of the operator." The Presiding Justice did not say, as counsel imply, that if the defendant's operation of the car caused the skidding, such operation was necessarily negligent, but only that it might be negligent. See *Burns* v. *Coté*, 86 N. H. 167, 168. He had already said that skidding was not in and of itself evidence of negligence, and the passage excepted to was followed by a recital of the circumstances to be considered in determining whether or not the defendant's manner of driving was reasonably careful. The exception is overruled.

In support of the remaining exception defendant's counsel argue as follows: "The fact that verdicts were returned for the plaintiffs in both actions brought by Herbert Young appears to indicate a finding by the jury that Dorothy Young was not contributorily negligent. On the other hand, the verdicts may be accounted for by the instructions to which exception was taken. One action brought by Herbert Young was to recover consequential damages suffered by him. The other was brought by him on behalf of Dorothy Young, his minor child, to recover for injuries suffered by her. The instruction that he was entitled to recover regardless of

his daughter's fault was not limited to the action brought by him individually, and may well have been understood by the jury to apply to both actions in which he was apparently party plaintiff."

It is highly improbable that any such misunderstanding was occasioned. In enumerating the cases at the beginning of the charge, the Presiding Justice said: "Dorothy Young has brought suit in the name of her father . . . and her father has brought suit for the expenses incident to her injuries." Immediately preceding the statement excepted to, the court instructed the jury concerning the injuries and case of Dorothy Young, and separate verdicts were returned in the "consequential-damage" and "next-friend" actions. Furthermore, the question now argued was not raised by the exception taken.

*In the actions of Daniel F. MacDonald and Roselle MacDonald, p. p. a., judgments for the defendant: in the actions against Roselle MacDonald, judgments on the verdicts; in the other actions, new trials.*

All concurred.